**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

|   |   |
|---|---|
| In re: <br><br> PENNY L. SPERRY AND JASON A. SPERRY <br><br> Debtors | Chapter 13 <br> Case No. 15-14583-MSH |

**MEMORANDUM OF DECISION AND ORDER ON OBJECTION OF HSBC BANK USA, N.A. TO CONFIRMATION OF FIRST AMENDED PLAN**

HSBC Bank USA, N.A. has objected to my confirming the First Amended Chapter 13 Plan dated February 24, 2016, of Penny and Jason Sperry, the debtors in this case. HSBC maintains that the plan, which requires HSBC to send the Sperrys monthly mortgage loan statements consistent with the plan's treatment of its claim, is unconfirmable.

The facts necessary to decide this contested matter are not in dispute. In September 2004, the Sperrys purchased a single family home in Gloucester, Massachusetts, and to help pay for it borrowed funds in return for which they executed a thirty-year note secured by a mortgage on the property. HSBC is the current holder of the mortgage. When the Sperrys filed their voluntary petition under chapter 13 of the Bankruptcy Code commencing this case on November 25, 2015, they were behind on their payments to HSBC to the tune of $11,416.99.

The Sperrys have proposed a so-called "cure and maintain" chapter 13 plan. The plan requires them to pay their pre-bankruptcy arrearage to HSBC in 60 monthly payments through the chapter 13 trustee (cure), while at the same time making their current monthly mortgage payments directly to HSBC (maintain).[1] The Sperrys' plan uses the official local form chapter

---

[1] In this district, debtors are permitted to tender post-petition payments directly to their secured creditors.

13 plan adopted in this district. See Massachusetts Local Bankruptcy Rule (MLBR) Appendix 1 Rule 13-4(a) and Official Local Form 3. In section VI entitled Other Provisions, the plan provides:

> The Debtors intend to continue to make regular monthly payments to HSBC Mortgage Service Center on account of its mortgage. Accordingly, HSBC Mortgage Service Center shall send the Debtors monthly mortgage statements consistent with its prepetition practice. Sending such statements shall not be considered by the debtors to be a violation of the automatic stay.[2]

At issue is whether this provision (the "monthly statement requirement") renders the plan unconfirmable.

The Sperrys assert that nothing prohibits their plan from requiring HSBC to send monthly statements and indeed those statements will help ensure that they stay on track with their post-petition mortgage payments. HSBC presents several reasons why the plan may not be confirmed. It first protests that it cannot send monthly statements reflecting post-petition account information "[d]ue to logistical limitations." HSBC says that while it is working on developing a system, it currently cannot give the Sperrys the information required by the plan and that the statements it could produce would be "confusing". Ironically, HSBC offers as an alternative that "the debtors can call HSBC at any time to determine the amount they owe post-petition, and the post-petition date they are due for[sic]." HSBC also argues that federal regulations exempt it from sending such statements to borrowers during the pendency of their bankruptcy cases, that sending such statements would likely violate the automatic stay, that the requirement to send

---

[2] The Sperrys include a similar provision in their plan with respect to Chase Auto Finances' secured claim. Chase has not objected to confirmation. Nevertheless, I have an independent obligation to review all plans and deny confirmation of any containing impermissible provisions, *Flynn v. Bankowski (In re Flynn)*, 402 B.R. 437, 442 (B.A.P. 1st Cir. 2009). Thus my ruling on HSBC's objection will apply to Chase.

monthly statements is an impermissible modification of its claim and that the addition of a monthly statement requirement is not a proper use of this district's form chapter 13 plan.

To resolve this dispute, I begin by canvassing the relevant statutory guidelines and rules, as well as apt cases and commentaries. Bankruptcy Code § 1322(a) enumerates the provisions that all chapter 13 plans must contain while § 1322(b) lists those which are optional; the final option being § 1322(b)(11) which permits plans to include "any other appropriate provision not inconsistent with" the Bankruptcy Code.[3] Section 1322(b)(2) permits a debtor to "modify the

---

[3] § 1322(a) and (b) provide:

(a) The plan--
    (1) shall provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
    (2) shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;
    (3) if the plan classifies claims, shall provide the same treatment for each claim within a particular class; and
    (4) notwithstanding any other provision of this section, may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507(a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(b) Subject to subsections (a) and (c) of this section, the plan may--
    (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;
    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
    (3) provide for the curing or waiving of any default;
    (4) provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

3

rights of holders of secured claims, *other than a claim* [such as HSBC's] *secured only by a security interest in real property that is the debtor's principal residence. . . .*" (emphasis added). Section 1322(b)(5) creates an exception of sorts to § 1322(b)(2)'s anti-modification provision by permitting a debtor to cure pre-petition monetary defaults while maintaining ongoing post-petition payments even for a non-modifiable home mortgage. The Sperrys have proposed such a cure and maintain plan.

In 2011, the Federal Rules of Bankruptcy Procedure were amended to add Rule 3002.1, which, as the Advisory Committee Note states, was intended to "aid in the implementation of § 1322(b)(5)." Subpart (b) of the rule provides that:

> [t]he holder of the claim [secured by the debtor's principal residence and treated by the plan pursuant to § 1322(b)(5)] shall file and serve on the debtor, debtor's counsel, and the

---

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
(6) provide for the payment of all or any part of any claim allowed under section 1305 of this title;
(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;
(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;
(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity;
(10) provide for the payment of interest accruing after the date of the filing of the petition on unsecured claims that are nondischargeable under section 1328(a), except that such interest may be paid only to the extent that the debtor has disposable income available to pay such interest after making provision for full payment of all allowed claims; and
(11) include any other appropriate provision not inconsistent with this title.

4

    trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

Thus, if a mortgagee complies with Rule 3002.1(b), a chapter 13 debtor will receive advance notice of any change to his periodic mortgage payment enabling him to adjust his post-petition payments accordingly.

    Many bankruptcy courts have adopted local rules and form chapter 13 plans for use in their districts. In Massachusetts, MLBR Appendix 1 Rule 13-4 requires all chapter 13 plans to "conform to MLBR Official Local Form 3, with such alterations as may be appropriate to suit the circumstances." The Massachusetts form plan includes a section entitled "other provisions" in which debtors may add terms not contained elsewhere on the form. Form plans promote ease and efficiency for debtors' attorneys in preparing plans and for creditors and courts in reviewing them. Standardization helps reduce the costs of chapter 13 relief. *In re Solitro*, 382 B.R. 150, 152 (Bankr. Mass. 2008). As a result, courts have held that "non-standard" or additional plan terms should be kept to a minimum and when they are needed, debtors should identify the special circumstances necessitating the inclusion of such non-standard terms. *Id.* at 153; *In re Rose*, GG 14-04308-JTG, 2015 WL 151221, at *3 (Bankr. W.D. Mich. Jan. 12, 2015). Plan provisions that merely recite what is already required by the Bankruptcy Code or Rules are generally not permitted. *Rose*, 2015 WL 151221, at 3; *Solitro*, 382 B.R. at 153.

    On February 14, 2013, the Consumer Financial Protection Bureau ("CFPB"), established by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C. § 5491(a), promulgated mortgage servicing rules amending both Regulation Z, 12 C.F.R. § 1026.1 *et seq.*, under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (TILA), and Regulation X, 12 C.F.R. § 1024 *et seq.,* under the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2601 *et*

5

*seq.,* (RESPA). The 2013 amendments to Regulation Z required mortgagees or their servicers to send borrowers periodic mortgage statements throughout the life of a loan even if the loan was in foreclosure or the borrower in bankruptcy. Those mortgage statements were to include the "(1) payment amount due; (2) payment due date; (3) amount of and date that any late fee will be imposed; (4) other fees and charges imposed; (5) transaction activity; (6) application of past payments; (7) information regarding partial payments; (8) contact information; (9) account information (outstanding principal balance, interest rate, date of rate changes, prepayment penalties); and (10) homeownership counselor information. 12 C.F.R. § 1026.41(d)." Laura M. Greco & Lauren E. Campisi, Understanding CFPB's Final Mortgage Servicing Rules and Their Impact on Foreclosures and Bankruptcies, 131 Banking L.J. 165 (2014).

The CFPB received comments from mortgagees and their servicers complaining that sending statements to borrowers in bankruptcy could create confusion and raising concerns as to how the statement requirements would apply in light of TILA, RESPA, the Fair Debt Collection Practice Act and the Bankruptcy Code. *See* Amendments to the 2013 Mortgage Rules, 78 Fed. Reg. 62993-01, 2013 WL 5723225 (Oct. 23, 2013). Consequently, effective January 10, 2014, the CFPB amended Regulation Z to exempt servicers from the periodic statement requirement while their borrowers were in bankruptcy. *See* CONSUMER FINANCIAL PROTECTION BUREAU, CFPB PROVIDES GUIDANCE ON MORTGAGE SERVICING RULES (2013), http://www.consumerfinance.gov/about-us/newsroom/cfpb-provides-guidance-on-mortgage-servicing-rules, last visited November 4, 2016. As amended, 12 C.F.R. § 1026.41(e)(5) now exempts servicers from sending the periodic statements described in 12 C.F.R. § 1226.41(d) if

6

the borrower is in bankruptcy. It is this exemption upon which HSBC relies as one of the bases for its objection to confirmation of the Sperrys' plan.[4]

Courts have permitted plan provisions requiring mortgagees to render periodic accountings to their chapter 13 debtor-borrowers. *In re Herrara*, 422 B.R. 698 (B.A.P. 9th Cir. 2010), *aff'd sub nom. In re Monroy*, 650 F.3d 1300 (9th Cir. 2010). "[B]urdening mortgagees with procedural obligations over the life of the plan does not, *per se*, violate § 1322(b)(2)'s anti-modification provision and is permissible and even desirable." *In re Collins*, 07-30454, 2007 WL 2116416, at *10-11 (Bankr. E.D. Tenn. July 19, 2007). As the court observed in *In re Payne*: "Unnoticed post-petition charges can derail a debtor's Chapter 13 plan and keep a successful debtor from achieving the ultimate bankruptcy goal—a fresh start. Debtors must be advised when post-petition charges are being assessed against their account so they can fulfill their expectation of addressing their debt in bankruptcy and emerge with their secured debt current . . ." *In re Payne*, 387 B.R. 614, 631-32 (Bankr. D. Kan. 2008) (footnotes omitted).

The United States Court of Appeals for the First Circuit, implicitly recognized the appropriateness of a monthly statement requirement in cure and maintain chapter 13 plans in *Ameriquest Mortgage Co. v. Nosek*, 544 F.3d 34 (1st Cir. 2008). After a thorough discussion of the contours of § 1322(b)(5) and the terms of the chapter 13 plan at issue, which contained no provision requiring the mortgage lender to bill or account during the life of the plan, the First Circuit concluded that the appropriate manner to protect chapter 13 debtors' § 1322(b)(5) cure

---

[4] The CFPB has issued for comment a draft amendment to take effect in April 2017, that will reinstate the requirement that borrowers in bankruptcy receive periodic statements unless one of several enumerated exceptions (none of which would be applicable in this case) applies.

rights thereby mitigating the threat of plan defaults was for bankruptcy courts to require "an amendment to the Plan specifying the accounting practices necessary to eliminate that threat." *Nosek*, 544 F.3d at 48.

And as noted in the definitive treatise on chapter 13:

For many good reasons, it is often desirable to quite specifically address the management of home mortgage claims in the Chapter 13 plan. For example, a plan provision to cure default and maintain payments on a home mortgage under § 1325(b)(5) requires several components: an arrearage amount; an arrearage payment; a total debt amount; an ongoing monthly payment; and, sometimes, an escrow adjustment. Plans often time-shift the commencement of ongoing payments, requiring explanation of the start dates for various payments and details for calculation of each part of the payment stream. During the years of a Chapter 13 case, home mortgages often adjust by contract with respect to interest rate, monthly payment, fees, expenses, escrow amounts and the like. To stay current and accurate during the years of a Chapter 13 plan, there has to be a constant flow of information among the mortgage holder or servicer, the trustee and the debtor.

Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy, 4th Ed. § 118.2* ¶2, Sec. Rev. May 19, 2011, http://www.ch13online.com/Subscriber/Chapter_13_Bankruptcy_4th_Lundin_Brown.aspx (footnotes omitted).

As the authors of Lundin, *supra*, have observed, debtors' attorneys have developed "best practices" to help ensure that chapter 13 debtors who successfully complete their multi-year plans are not blindsided when their mortgagees notify them that significant fees and other charges assessed during the years of plan performance are owing at the conclusion of the plan (what the authors call an "invisible default"). Lundin at § 118.2. Those best practices call for plan provisions requiring mortgagees to provide chapter 13 borrowers with monthly statements and periodic accountings of fees and charges. *Id.*

Based on the weight of the extant legal authority, I conclude that a chapter 13 plan's requirement that a lender send periodic mortgage loan statements to the debtor does not render

8

the plan unconfirmable. The Bankruptcy Code certainly doesn't prohibit it and arguably permits it under § 1322(b)(11). HSBC's argument that a monthly statement requirement is an impermissible modification in violation of § 1322(b)(2), is unpersuasive, particularly when examined against the backdrop of Rule 3002.1 which imposes a host of reporting requirements on mortgage lenders. Besides, § 1322(b)(2) prohibits the modification of the "rights" of holders of home mortgage claims. Requiring such holders to send monthly statements is not a right but an obligation, and one that is inextricably bound to a debtor's ability to cure mortgage defaults, one of the primary objectives of chapter 13. And even if the obligation could somehow be stretched to qualify as a right, its ministerial or procedural nature would exclude it from qualifying as the kind of right the statute is intended to protect from modification. As the authors of Collier on Bankruptcy state, the anti-modification provisions of § 1322(b)(2) do not "preclude a chapter 13 plan from imposing procedural or accounting requirements on a mortgage holder in order to effectuate the cure of a default under the plan." Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶ 1322.06[a] at 1322-25 (16th ed. 2015). *See also Nosek*, 544 F.3d at 48; *Herrera*, 422 B.R. at 721; *Payne*, 387 B.R. at 631-32; *Collins*, 2007 WL 2116416, at *10-11.[5]

Contrary to HSBC's suggestion, such statements do not violate the automatic stay. In Massachusetts, MLBR 4001-3 grants secured creditors relief from the automatic stay, to the extent necessary, in order to send debtors written correspondence "consisting of statements, payment coupons" and the like. Further, the fact that a monthly statement requirement is not verbalized in this district's plan does not prohibit the inclusion of such a provision. Section VI of

---

[5] HSBC does not argue and I do not find that the adoption of Rule 3002.1 altered a chapter 13 debtor's ability to include a plan provision requiring the lender to send periodic mortgage statements.

9

the Massachusetts form plan is specifically designated for the insertion of additional plan provisions.

As for HSBC's protest that a monthly statement requirement presents a logistical challenge, I find that the burden to HSBC in overcoming such a challenge is outweighed by the harm to the Sperrys that is likely to occur if monthly statements are not provided to them. It is for this reason that inclusion in our local form plan of an additional provision containing a monthly statement requirement is appropriate.

Finally, the Sperry's plan does not violate 12 C.F.R. 1026(e)(5) by requiring HSBC to send them periodic statements. The regulation excuses HSBC from sending monthly statements during a pending bankruptcy case; it does not prohibit the bank from doing so. The three cases on which HSBC relies for its interpretation of the CFPB regulation, *In re Rose*, GG 14-04308-JTG *et al.*, 2015 WL 151221 (Bankr. W.D. Mich. Jan. 12, 2015); *In re Jackson*, 446 B.R. 608 (Bankr. N.D. Ga. 2011); and *In re Solitro*, 382 B.R. 150 (Bankr. D. Mass. 2008), do not support HSBC. *Rose* did not deal with the mortgagee's sending of periodic statements but with plan provisions (such as a grant of standing to the debtors to pursue causes of action available under chapter 5 of the Bankruptcy Code, the method for applying pre- and post-petition mortgage payments and the limitation on notice by mail) that were duplicative of and in some instances inconsistent with provisions of the Bankruptcy Code and the local form in use in the Western District of Michigan. *Solitro*, cited by the *Rose* court, and *Jackson* were both decided prior to the adoption of Fed. R. Bank. P. 3002.1 but the proposed plans in each case contained terms that went well beyond what can fairly be characterized as procedural requirements only. In *Solitro*, the court refused to confirm a plan that proposed to strike arbitration and alternative dispute

resolution clauses from any contracts with the debtor. *Jackson* addressed requirements to give the debtors notice of changes to mortgage payments, the imposition of additional charges and a provision requiring the mortgagee to provide an annual escrow statement upon request but also included a provision that if the debtor paid the cure amount per the plan or the lender's proof of claim and timely made all post-petition payments, then the lender's right to recover any other prepetition amount due was extinguished.

In this case, the Sperrys propose only one additional term in their plan, namely that they continue to receive the same type of periodic payment statements that they received prior to the filing of their bankruptcy case. This term is not so onerous that it modifies HSBC's substantive rights. It does not impose any obligations on HSBC that it did not have before the Sperrys commenced their case.

For the foregoing reasons, the objection of HSBC to confirmation of the debtors' first amended plan is OVERRULED.

At Boston, Massachusetts this 8th day of December, 2016.

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:   Tanya Tabachnik, Esq.
Harmon Law Offices, P.C.
Newton Highlands, MA
for HSBC Bank USA, N.A.

Marques C. Lipton, Esq.

        Law Office of Nicholas F .Ortiz, P.C.
        Boston, MA
        for Penny Sperry and Jason Sperry